Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,824-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JARRELL E. GODFREY, JR.                    Plaintiff-Appellant

versus

GOAUTO INSURANCE                           Defendants-Appellees
COMPANY AND CRAIG
DEWAYNE JONES

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Tensas, Louisiana
Trial Court No. 24,397

Honorable Angela Lynn Claxton, Judge

* * * * *

SARTIN LAW FIRM, LLC                       Counsel for Appellant,
By: J. Cole Sartin                         Jarrell E. Godfrey, Jr.

JOHN SIBLEY GODFREY

JARRELL E. GODFREY, JR.                    In Proper Person

BRADLEY J. GADEL, APLC                     Counsel for Appellee,
By: Bradley J. Gadel                       GoAuto Insurance
                                           Company

VOORHIES & LABBE                    Counsel for Appellee,
By: Cyd Sheree Page                 Craig Dewayne Jones

* * * * *


Before STONE, COX, and ROBINSON, JJ.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

This appeal, which is the second appeal in this case, arises from the Sixth Judicial District Court, the Honorable Angela Claxton presiding. Jarrell Godfrey, Jr. (hereinafter, "Godfrey" or "plaintiff"), filed suit for damage to his vehicle against Craig Jones ("Jones") and his insurer, Go Auto Insurance Co. ("Go Auto"). Jones was operating Godfrey's vehicle without permission and crashed it into a utility pole. At the time of the crash, Jones had in effect a motor vehicle liability policy issued by the defendant-appellee, Go Auto.[1]

The parties filed cross motions for summary judgment ("MSJ"); the trial court granted Go Auto's MSJ (based on application of exclusion 4) and denied the plaintiff's MSJ. The plaintiff appealed. Holding that exclusion 4 was unenforceable due to La. R.S. 32:900(C), we reversed the summary judgment in favor of Go Auto and remanded for further proceedings. *Godfrey v. Go Auto Ins. Co.*, 54,060 (La. App. 2 Cir. 9/22/21), 328 So. 3d 537, *writ denied,* 21-01496 (La. 12/21/21), 329 So. 3d 826. We also held that the summary judgment evidence (i.e., Godfrey's affidavit, which was not contradicted by any other evidence) established that Jones was operating the vehicle without permission. Finally, we pretermitted all other issues.

On remand, a flurry of litigious filings ensued. On January 11, 2022, the plaintiff filed a MSJ "To Implement Opinion Of The Second Circuit Court Of Appeals," therein requesting a money judgment in favor of plaintiff and against both Jones and Go Auto, including approximately

---

[1] This policy will hereinafter be referred to as the "Jones policy."

$6,000 (against both) in property damage and loss of use, and over $160,000 in bad faith penalties[2] and attorney fees against Go Auto only.[3] In response, Go Auto filed exceptions of no cause of action and no right of action regarding Godfrey's claims for attorney fees.

On May 9, 2022, Go Auto filed a second MSJ denying coverage: (1) re-asserting exclusion 4 in light of Louisiana Supreme Court jurisprudence, *Landry v. Progressive Sec. Ins. Co.*, 21-00621 (La. 1/28/22), 347 So. 3d 712, *reh'g denied*, 21-00621 (La. 3/25/22), 338 So. 3d 1162; and (2) asserting exclusion 12 (damages caused while engaged in a crime) in light of our holdings in the prior appeal and the aforementioned writ disposition, i.e., that Jones did not have permission to operate Godfrey's vehicle.[4]

The Jones policy and its declarations page were introduced with the Go Auto MSJ. The declarations page reflects that Jones only purchased liability coverage—i.e., no comprehensive or collision. The insuring agreement for the liability coverage in the Jones policy states that Go Auto "will pay damages, for which a covered person is legally liable because of…property damage arising out of an auto accident to which this policy applies." However, pursuant to exclusion 12 (as previously mentioned), there is no liability coverage for damages "caused by a covered person while engaged in a crime"—and the policy defines "crime" as "any *felony* or any action to flee from, evade or avoid arrest or detection by the police or other

---

[2] These are pursuant to La. R.S. 22:1892 or La. R.S. 22:1973.

[3] Through independent counsel (provided by Go Auto under a reservation of rights agreement), Jones filed a limited response to the plaintiff's MSJ indicating that he would be asserting his right to silence due to the criminal charges arising out of the motor vehicle accident herein; the plaintiff moved to strike this response.

[4] Both exclusions discussed in this appeal are part of Part A of the Jones policy, which concerns liability coverage.

law enforcement agency." (Emphasis added). Exclusion 4 eliminates liability coverage for:

> Property damage to any property…including a non-owned auto or a temporary substitute vehicle, owned by, being transported by, *used by*, or in the care, custody, or control of a covered person. (Emphasis added).

In a judgment dated July 27, 2022, the trial court denied Godfrey's aforementioned MSJ in its entirety.[5] Go Auto's opposition to this MSJ was untimely, but the trial court considered it anyway. Godfrey obtained a supervisory writ, wherein we held that the trial court erred in considering the untimely opposition; we conducted de novo review without taking cognizance of the untimely opposition, reaffirmed our holding in the prior appeal, i.e., that exclusion 4 is unenforceable, and granted partial summary judgment for Godfrey to that extent only. This writ disposition was rendered January 6, 2023, in No. 54,998-CW. This writ disposition granting partial summary judgment to Godfrey was not designated as a final judgment.

On June 29, 2023, the trial court granted Go Auto's second MSJ. The plaintiff filed this appeal and a flurry of motions in this court. In this appeal, Godfrey urges the following errors: (1) res judicata bars reconsideration of the question of coverage under the Jones policy; (2) the Godfrey vehicle is a temporary substitute vehicle under the Jones policy and therefore coverage is mandated by La. R.S. 32:900(C) and La. R.S. 22:1296(A); (3) exclusion 12 of the Jones policy is inapplicable and unenforceable; (4) Go Auto's exceptions were filed late and should have been stricken or denied on that basis; (5) Go Auto should be required to provide Jones with independent

---

[5] Godfrey's contention to the contrary is simply wrong.

counsel, which Godfrey says entitles him (Godfrey) to attorney fees from Go Auto; (6) the trial court erred in not ruling on the plaintiff's MSJ against Jones; and (7) Judge Claxton should have been recused.[6]

## DISCUSSION

**Motions for summary judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

Furthermore, "[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13, 20-21. Finally, the court must draw those reasonable inferences from the undisputed facts which are most favorable to the party opposing the motion; likewise, all doubt must be

---

[6] Judge Claxton was recused and then, on supervisory writ, reinstated by this court prior to her issuing the judgments appealed herein. Godfrey filed a motion seeking to add recusal-related items to the instant record; we denied that motion.

4

resolved in the opposing party's favor. *Wyrick v. Golden Nugget Lake Charles, LLC*, 20-0665 (La. App. 1 Cir. 12/30/20), 317 So. 3d 708.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Only certain types of documents may be offered in support of or in opposition to the MSJ. La. C.C.P. art. 966(A)(4)(a).[7] Those are:

> pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions

*Id.*

Likewise, the court may consider only those documents filed or referenced in support of or in opposition to the MSJ. La. C.C.P. art. 966(D)(2). Such reference is governed by La. C.C.P. art. 966(A)(4)(b):

> Any document listed in Subsubparagraph (a) of this Subparagraph previously filed into the record of the cause may be specifically referenced and considered in support of or in opposition to a motion for summary judgment by listing with the motion or opposition the document by title and date of filing. The party shall concurrently with the filing of the motion or opposition furnish to the court and

---

[7] La. C.C. art. 1853 provides that "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it."

5

the opposing party a copy of the entire document with the pertinent part designated and the filing information.

"Appellate courts review [grants of] summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *LUBA Cas. Ins. Co. v. Hygenic Corp.*, 47,395 (La. App. 2 Cir. 9/20/12), 131 So. 3d 890, 892.

**Insurance contracts and coverage litigation, generally**

In *Lewis v. GEICO Cas. Co.*, 51,864 (La. App. 2 Cir. 4/27/18), 246 So. 3d 815, 817, *writ denied*, 18-1024 (La. 10/8/18), 253 So. 3d 796, we explained:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.
> …
> Insurance companies may limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *However, exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured.* (Internal citations omitted; emphasis added).

The words of an insurance contract, unless defined therein, generally must be given their "generally prevailing meaning." La. C.C. art. 2047.

The party asserting coverage bears the burden of proving the existence of a policy and coverage. *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13), 126 So. 3d 544, 549, *writ denied*, 13-2898 (La. 2/28/14), 134 So. 3d 1176. However, the insurer bears the burden of proving policy limits or the applicability of an exclusion. *Id.*; *Lewis, supra*.

**Res judicata**

The plaintiff argues that because we granted in his favor partial summary judgment decreeing that exclusion 4 is unenforceable, "res

judicata" bars Go Auto from again asserting a lack of coverage on *any* ground in this second MSJ.

The grant of "partial summary judgment…does not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." La. C.C.P. art 1915(B)(1). Because our writ disposition granting partial summary judgment to Godfrey was not so designated, it constitutes an interlocutory ruling, not a final judgment.

Res judicata does not apply to an interlocutory ruling; rather, the "law of the case doctrine" determines whether an interlocutory ruling has any preclusive effect. *Lathon v. Leslie Lakes Ret. Ctr.*, 54,479 (La. App. 2 Cir. 9/21/22), 348 So. 3d 888, 892–93, *writ denied,* 22-01566 (La. 12/20/22), 352 So. 3d 80.  We have previously explained:

> Regarding an appellate court, the law of the case doctrine is merely a discretionary policy. Thereunder, an appellate court ordinarily will not, on subsequent appeal, reconsider its own rulings of law on a subsequent appeal in in the same case.
> …
> The law of the case rule cannot supplant the Code of Civil Procedure...[and]...only applies when the same issue is presented to the same court that has previously decided that issue in the same case which has not become res judicata (original emphasis omitted; internal citations and quotation marks omitted).

*Fluid Disposal Specs., Inc. v. UniFirst Corp.*, 53,014 (La. App. 2 Cir. 9/25/19), 316 So. 3d 1222, 1225, *aff'd on reh'g*, 53,014 (La. App. 2 Cir. 6/3/20), 316 So. 3d 1252.  Nor can the law of the case rule supplant Louisiana Supreme Court jurisprudence.  In light of *Landry, supra*, we are compelled to reconsider our earlier rulings regarding the enforceability of exclusion 4.

**Exclusion 4 in light of *Landry v. Progressive Sec. Ins. Co*.**

Contrary to our previous holding in this case, *Landry* holds that the Louisiana Motor Vehicle Safety Responsibility Law (La. R.S. 32:851 *et seq*.) does not legislatively incorporate into insurance policies subject thereto the coverage described by La. R.S. 32:900(C), except under special circumstances not present in the instant case. *Landry* further observed that this was a conscious choice of the legislature, and therefore, courts may not override it in the name of "public policy."

In our prior decisions, we held that Go Auto's exclusion 4 was invalid as applied to the facts of this case because it contravened La. R.S. 32:900(C). *Landry* abolishes the premise for our previous decisions. Accordingly, we must reconsider our previous decisions. As previously stated, exclusion 4 eliminates liability coverage for:

> Property damage to any property…including a non-owned auto or a temporary substitute vehicle, owned by, being transported by, *used by*, or in the care, custody, or control of a covered person. (Emphasis added).

Godfrey's claim is for property damage to his suburban, i.e., a "non-owned auto" under the Jones policy, and that damage occurred while Jones was *using* the suburban. Therefore, exclusion 4 applies on its own terms and is not in contravention of statutory law or public policy.

As explained below, Godfrey attempts to escape enforcement of exclusion 4 by arguing that the vehicle is classified as a temporary substitute vehicle ("TSV"), and therefore, coverage is mandated by La. R.S. 22:1296(A).

**Temporary substitute vehicle**

In relevant part, La. R.S. 22:1296(A) states:

> Every approved insurance company…writing automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles *as defined in the applicable insurance policy*…any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on a single or multiple vehicles*, at least one of which has comprehensive and collision or liability insurance coverage*, those coverages shall apply to the temporary substitute motor vehicle, as defined in the applicable insurance policy…Such insurance shall be primary. (Emphasis added).

The Jones policy defines "temporary substitute vehicle" as:

> Any vehicle you, a family member or any resident of your household does not own, *but borrows or rents*, but only while used as a temporary substitute vehicle for your insured auto while it is out of normal use because of its breakdown, repair, servicing, loss, or destruction. (Emphasis added).

Neither "borrow" nor "rent" is defined in the policy. Therefore, these terms must be given their generally prevailing meanings. Especially in the context of the policy's definition of "temporary substitute vehicle," both "borrow" and "rent" impart an element of permission by a counterparty, i.e., a lender or lessor, respectively. Jones' unauthorized use of Godfrey's vehicle did not constitute borrowing or renting the vehicle, so it was not a "temporary substitute vehicle" for purposes of the Jones policy. Godfrey's own sworn testimony that Jones did not have permission to use the vehicle is a binding judicial confession, which has been properly referenced for purposes of summary judgment. La. C.C. art. 1853; La. C.C.P. art. 966(D)(2). Furthermore, Godfrey is judicially estopped from reversing the position he originally took in his sworn affidavit which he submitted to the court as evidence, i.e., that Jones did not have Godfrey's permission to use the vehicle. That testimony has already served as the basis for two decisions of this court. *Thomas v. Econ. Premier Assur. Co*., 50,638 (La. App. 2 Cir.

5/18/16), 196 So. 3d 7, 11, *writ denied*, 16-1169 (La. 10/28/16), 208 So. 3d 377, *and* 16-1177, (La. 10/28/16), 208 So. 3d 378 (La. 2016).[8]

**The "crime exclusion" from liability coverage**

Neither our prior opinion, nor our prior writ disposition granting partial summary judgment to Godfrey, addressed exclusion 12; those decisions concerned only exclusion 4. Therefore, neither res judicata nor the law of the case doctrine extends to exclusion 12.

As previously stated, the insurer has the burden of proof regarding applicability of an exclusion. Therefore, the inquiry is whether the insurer introduced, for the purpose of summary judgment, prima facie evidence that Jones was "engaged in a crime" when he crashed the Godfrey vehicle into the utility pole. The Jones policy defines "crime" as "any *felony* or any action to flee from, evade or avoid arrest or detection by the police or any other law enforcement agency." (Emphasis added).

We addressed an identical policy exclusion in *Harris v. Dunn,* 45,619 (La. App. 2 Cir. 9/22/10), 48 So. 3d 367, 372. Therein, the following fact pattern led to the insurer's invocation of the "crime exclusion":

> Latiffany [the defendant] was in her vehicle at…[an]
> intersection …when a vehicle driven by Latonya Harris
> pulled up beside Latiffany's vehicle. Shatara, who is
> Latonya's sister and was a passenger in Latonya's vehicle,
> exited and approached Latiffany's vehicle. The two
> women exchanged words, and Shatara may have either
> swung at Latiffany or hit her. As Shatara walked back to
> Latonya's vehicle, Latiffany drove her car forward, made a

---

[8] Regardless of whether Go Auto's reference in its second MSJ satisfied La. C.C.P. art 966(A)(4)(b), this court must consider Godfrey's affidavit testimony. It has already been introduced, considered, and explicitly used as the basis for our previous opinion deciding the first volley of cross MSJs, and as the basis of our writ disposition granting partial summary judgment to Godfrey. To now disregard this Godfrey affidavit because Go Auto's reference thereto in re-urging the grounds for its original MSJ (i.e., exclusion 4) did not satisfy every jot and tittle of La. C.C.P. art. 966(A)(4)(b) would be an absurd result under these circumstances.

U-turn, and drove back in the same direction. Latiffany's vehicle hit the front passenger door of Latonya's vehicle. Shatara, who was behind the passenger door while in the process of entering the vehicle, was injured.

…

[The police] arrested…[Latiffany] for the charge of aggravated second degree battery…[Subsequently], Latiffany pled guilty to simple battery.

*Id.* at 370. We held that the exclusion was inapplicable, stating:

*The USAgencies policy defines the word "crime" as meaning "any felony or any action to flee from, evade or avoid arrest or detection by the police or other law enforcement agency."* Latiffany was not fleeing, evading, or avoiding arrest when the incident occurred. Thus, this portion of the definition is not applicable. USAgencies relies on the court minutes documenting Latiffany's guilty plea to simple battery as evidence that she committed a crime to satisfy the policy exclusion. However, simple battery is a misdemeanor offense and does not fit the definition of a crime under USAgencies policy. Because the guilty plea does not show that Latiffany was engaged in a "crime" as defined by USAgencies' policy, USAgencies is not entitled to summary judgment on the basis of its crime exclusion. (Emphasis added).

*Id*. at 372. Thus, *Harris* teaches that the insured's conduct is not a "felony" for purposes of this exclusion unless the insured is *convicted* of a felony. This constraint is not explicitly stated (or negated) in the language of the exclusion, but instead, it is a matter of public policy. Generally, whenever law or contract prescribes private rights based on another party's engagement in/commission of a "felony" (or any crime specified by name and/or statutory citation), those consequences attach only upon *conviction* for that crime. This rule of construction harmonizes such civil consequences with bedrock constitutional principles of criminal justice, such as the presumption of innocence, the prosecution's burden of proof beyond a reasonable doubt, and the district attorney's prosecutorial discretion. *Harris* demonstrates the potential absurdity that would otherwise obtain: the

11

liability insured therein could have lost coverage for having "engaged in a…felony" even though she was not convicted of any felony.

In this case, the insurer relies entirely on our earlier finding that Jones' use of the Godfrey vehicle was without permission as proof that Jones was engaged in a felony when he crashed the vehicle. This is clearly insufficient to satisfy the insurer's burden of establishing a felony. *Harris, supra.*

Also, like the defendant in *Harris*, Jones was not engaged in "any action to flee from, evade or avoid arrest or detection by the police or any other law enforcement agency" when he wrecked Godfrey's vehicle. This fact likewise distinguishes the other cases cited by Go Auto, *Safeway Ins. Co. of Louisiana v. Gardner*, 15-696 (La. App. 5 Cir. 4/27/16), 191 So. 3d 684, and *Charles v. Safeway Ins. Co. of Louisiana*, 18-740 (La. App. 3 Cir. 5/15/19), 272 So. 3d 970.

The inapplicability of exclusion 12 has no impact on Go Auto's entitlement to summary judgment. Regardless of whether exclusion 12 applies, Go Auto is entitled to summary judgment based on exclusion 4.

**Independent counsel for Jones**

The plaintiff asserts that he filed a "motion for declaratory judgment" declaring that Go Auto owes Jones independent counsel regardless of whether the policy provides coverage, and that, somehow, this entitles the plaintiff to attorney fees for this effort. However, Go Auto *did* in fact provide independent counsel for Jones, and the trial court correctly denied Godfrey's motion.

**Bad faith; pro se attorney fees; attorney fees for plaintiff's additional counsel**

The plaintiff asserts that he is entitled to bad faith damages, and to attorney fees largely for his work on his own behalf herein, due to Go Auto's supposedly arbitrary and capricious refusal to settle. (He also demands attorney fees for his "special counsel for argument" in this appeal). In response to Godfrey's demand for attorney fees for his own self-representation, Go Auto filed exceptions of no right and no cause of action. Godfrey filed two motions to strike these exceptions as "insufficient" pursuant to La. C.C.P. art. 964.[9]

Because, pursuant to *Landry*, *supra*, there is no coverage under the Jones policy, Go Auto's refusal to settle cannot have been in "bad faith," and Godfrey cannot be entitled to statutory penalties or attorney fees. If Godfrey's allegation that Go Auto breached its contractual duty to defend Jones were factually true, any resultant cause of action (including an award of attorney fees) would belong to Jones—not Godfrey, who is not a party to that contract. Additionally, a self-represented litigant, such as Godfrey, cannot recover attorney fees. *Bradford v. Webster Par. Police Jury*, 48,981 (La. App. 2 Cir. 5/14/14), 139 So. 3d 39, 43; *Swayzer v. Scoby,* 55,416 (La. App. 2 Cir. 2/28/24), 381 So. 3d 223, 228, *writ not considered,* 24-00437 (La. 6/25/24). Accordingly, all of Godfrey's claims for attorney fees and statutory penalties are meritless, regardless of Go Auto's peremptory exceptions.

---

[9] Godfrey asserts that the exceptions were untimely because they were filed after submission of Go Auto's first MSJ for decision in the trial court. That decision was the subject of Godfrey's first appeal in this case.

13

**Recusal of Judge Claxton**

Before Judge Claxton denied Godfrey's second MSJ and granted Go Auto's second MSJ, Judge Claxton was recused; however, we granted a supervisory writ challenging that recusal, and reinstated Judge Claxton. This issue has already been decided. In fact, this court has already issued an order denying Godfrey's motion seeking to include recusal-related items in the record in this appeal (writ record No. 55,003-C).

## CONCLUSION

The judgment of the trial court is **AFFIRMED**, and all of Godfrey's claims against Go Auto are **DISMISSED WITH PREJUDICE**. Our prior writ disposition granting partial summary judgment to Godfrey is **REVERSED** and **VACATED**. Our earlier writ disposition reversing the recusal of Judge Claxton is **REAFFIRMED**. The trial court's denial of Godfrey's motion to appoint counsel for Jones is **AFFIRMED**. All costs of this appeal and the lower court proceedings are taxed to Godfrey, as he has unremittingly pursued an excessive number of near frivolous motions and arguments.